Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5910 | **DATE** | 12/3/2002 |
| **CASE TITLE** | Barrett vs. Fox and Grove, Chartered | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Fox and Grove's motion to dismiss [25-1] is denied for the reasons stated in the attached order. Barrett's motion to strike portions of the affidavit of Kenneth J. McGrath [31-1] is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 0 9 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 35 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 12/3/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| mm | courtroom deputy's initials | 02 DEC -6 AM 9:15 | mm | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
DEC 0 9 2002

| | |
|---|---|
| WILLIAM HENRY BARRETT,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>FOX AND GROVE, CHARTERED,<br><br>　　　　Defendant. | Case No. 01 C 5910 |

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Plaintiff William Henry Barrett filed suit against defendant Fox & Grove, Chartered ("Fox & Grove") to recover monies allegedly owed him under an ERISA deferred compensation plan (Count 1) and unpaid wages and compensation (Count 2). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This matter is now before the Court on Fox & Grove's Motion to Dismiss.[1] For the reasons set forth below, Fox & Grove's motion is denied.

## FACTUAL BACKGROUND

Fox & Grove was a Chicago-based law firm founded in approximately July 1979. Barrett is a licensed Illinois attorney who worked at Fox & Grove until he resigned in December 2000.

---

[1] Fox & Grove's motion, which was filed at the close of discovery, is more properly styled a motion for summary judgment. Fox & Grove submitted a Local Rule 56.1 statement of material facts, including supporting affidavits and exhibits outside the pleadings, to which Barrett had the opportunity to respond. Fed. R. Civ. P. 12(c); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("when the judge considers evidence outside the pleadings he must convert the defendant's motion to dismiss ... to a motion for summary judgment").



At the time of his resignation, Barrett was an equity partner and a participant in Fox & Grove's Deferred Compensation Plan (the "Plan"). The Plan is an unfunded ERISA plan which Fox & Grove maintained as "a vehicle for, among other things, repaying to its participants the amount of their respective 'capital accounts' at Fox & Grove." Cmplt. ¶¶9, 10. Under the terms of the Plan, any participant that died, became disabled or left the employ of Fox & Grove would be paid his or her deferred compensation account, as well as consideration for Fox & Grove stock and any notes payable from Fox & Grove, over a five-year period in 60 equal monthly installments, without interest. *Id.* ¶10.

Following his resignation, Barrett received two monthly deferred compensation payments totaling $1,440.86 by a single check dated March 1, 2001. On March 31, 2001, however, Fox & Grove ceased its operations, terminated the employment of all of its attorneys, and commenced liquidation. As of that date, eleven individuals, including Barrett, were entitled to payment under the Plan. With the exception of one participant who erroneously received four months of deferred compensation after the firm ceased operations, no other Plan participant received any such compensation after March 31, 2001.

On or about March 23, 2001, Barrett filed an action in the Circuit Court of Cook County alleging that Fox & Grove failed to fulfill its contractual obligation to pay his deferred compensation under the Plan. Barrett subsequently dismissed that action and on August 1, 2001 filed the instant lawsuit alleging a state law contract claim for unpaid wages and an ERISA claim based on the firm's (1) failure to pay him any installments of deferred compensation after March 31, 2001, and (2) erroneous calculation of the total value of his deferred compensation account. Barrett's lawsuit led to a meeting of the firm's Board of Directors. Fox & Grove claims that at

2

the time of the meeting, the firm had not yet ascertained all of its creditors or fully paid those creditors of which it was aware. Def. Facts ¶29. Barrett insists that a December 18, 2001 memorandum to the firm's shareholders shows that Fox & Grove was "awash in cash and collectible receivables." Pl. Mem., p. 2; PX A (stating that the firm's December 31, 2001 financial statement showed a net income of $511,000 and $175,300 in cash). Fox & Grove claims that the federal taxes on the $511,000 would amount to $173,740, which only confirms that the firm "had inadequate cash to meet tax obligations and to fund current operations." Def. Reply, p. 5.

In any event, it is undisputed that the directors were uncertain whether the firm would be able to pay all Plan participants the entirety of their deferred compensation accounts after repaying all outstanding debts. Thus, the directors determined that no individual participant should receive any payments unless all other participants received a proportionate share. Def. Facts ¶¶31, 32. To accomplish this result, the directors amended the Plan on May 21, 2002, retroactive to March 31, 2001, to provide that no participant would receive any payment of deferred compensation "until such time as the [Plan] Committee, in its reasonable judgment, decides that all debts of the [firm] other than obligations under the plan have been paid or settled." DX A ¶5.1(b); Def. Facts ¶32. The Plan Committee consists of the three individuals with the largest deferred compensation accounts who are responsible for administering the Plan. *Id.* ¶33.

Fox & Grove now claims that the retroactive amendment to the Plan defeats Barrett's claim for any further payment until the liquidation process is complete; that is, "he will now be treated on an equal basis with all other participants who are abiding the liquidation process."

Def. Mem., p. 4. In addition, to resolve the remaining dispute concerning the value of Barrett's deferred compensation account, Fox & Grove now stipulates that it is valued at $61,434. *See* Stipulation, DX 4. In that regard, Fox & Grove concedes that prior to the firm's dissolution, Barrett was entitled to two monthly payments totaling $2,052.80 but was only paid $1,440.86. Accordingly, the firm delivered to Barrett's counsel a check in the amount of $611.94 to make up the difference. Def. Facts ¶35. Fox & Grove also asks that the Court decline to exercise supplemental jurisdiction over Barrett's breach of contract claim if we grant judgment in the firm's favor on the ERISA claim.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, a court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A. **ERISA Claim**

It is undisputed that when Barrett resigned from Fox & Grove in December 2000, he started receiving benefits under the Plan; indeed, the firm paid him two monthly installments on March 1, 2001. It is also undisputed that Fox & Grove amended the Plan on May 15, 2002, retroactive to March 31, 2001, to provide that participants would not receive any benefits until the firm paid off all other creditors. The only question is whether the amendment was valid and, if so, whether it has rendered Barrett's claim for benefits moot.

4

The Plan at issue is an ERISA "top hat plan" – an unfunded plan that an employer maintains "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees." 29 U.S.C. §§1051(2), 1081(3), 1101(a); *Garratt v. Knowles*, 245 F.3d 941, 946 n.4 (7th Cir. 2001); Pl. Mem., pp. 3-4; Def. Reply, p. 2. As such, it is exempted from ERISA's vesting, participation, funding, and fiduciary rules but is subject to ERISA's enforcement provisions. *Garratt*, 245 F.3d at 946 n.4 (citing *Olander v. Bucyrus-Erie Co.*, 187 F.3d 699, 604 (7th Cir. 1999)); *Koenig v. Waste Management, Inc.*, 76 F. Supp. 2d 908, 913-14 (N.D. Ill. 1999). "Federal courts . . . treat top hat plans as unilateral contracts, which create a vested right in those employees who fulfill the plan's requirements." *Koenig*, 76 F. Supp. 2d at 913-14. *See also Aiena v. Olsen*, 69 F. Supp. 2d 521, 532-33 (S.D.N.Y. 1999) (a top hat plan "is treated as a unilateral contract offer that is accepted upon retirement, at which point it becomes irrevocable"); *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) ("[a] pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years"). Once performance is completed, an employer cannot terminate or modify the plan unless it has explicitly reserved the right to do so. *Lund v. Citizens Financial Group, Inc.*, No. CV 97-183-M, 1999 WL 814341, at *20 (D.N.H. Sept. 30, 1999); *Kemmerer*, 70 F.3d at 287-88 ("even when a plan reserves to the sponsor an explicit right to terminate the plan, acceptance by performance closes that door under unilateral contract principles (unless an explicit right to terminate or amend after the participants' performance is reserved)"); *In re New Valley Corp.*, 89 F.3d 143, 151 (3d Cir. 1996); *Aiena*, 69 F. Supp. 2d at 533 ("the sponsor's ability to amend as to

those who have retired prior to any given amendment depends upon the clarity with which the plan reserves that right").

Fox & Grove claims that the May 23, 2001 amendment was proper because the Plan stated that it could be amended or terminated "at any time." Plan §§8.1, 8.2, Ex. A to Cmplt. According to the firm, this language clearly allowed it to amend the Plan even after performance was completed and benefits had vested. Reply Mem., p. 2. Thus, the firm says, the amendment effectively made Barrett's claim for benefits moot. Def. Mem., p. 4. Barrett argues that Fox & Grove's interpretation of the "at any time" language is unreasonable because it would render the Plan illusory. Pl. Mem., pp. 5-6. Whether Fox & Grove had the ability to amend the Plan to affect vested benefits depends on the language of the Plan itself. Barrett maintains that the Plan is ambiguous and, thus, the Court should consider extrinsic evidence on this issue – namely, a May 13, 1999 memorandum stating that the Plan document "formalizes the obligation to pay you your 'capital account' at termination of your partnership." Pl. Mem., p. 4; Memo of 5/13/99, Ex. A to Cmplt. Fox & Grove insists that the Plan clearly permits retroactive amendment but does not directly address the issue of ambiguity.

A contract is ambiguous when the parties suggest different, yet reasonable interpretations." *Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 732 (7th Cir. 1996). At least one court has found that the seemingly clear phrase "at any time" is not unambiguous in this context. In *In re New Valley*, the top hat plan at issue contained language that it could be terminated at any time. 89 F.3d at 151. The Third Circuit found that allowing the employer to terminate the benefits even after an employee retired – *i.e.*, after the benefits vested – would make the contract illusory. The court explained that

6

> [a]lthough parties are free to enter into illusory agreements, the unlikelihood that they will do so when significant benefits are at stake may render a term ambiguous. In this context, the unlikelihood that the [plaintiffs] agreed to allow [defendant] to terminate their retirement benefits at its whim, coupled with [plaintiffs'] reasonable alternative interpretation of "at any time" (until performance), supports the argument that the term is ambiguous.

*Id.* The court noted that the defendant had made oral representations that the plan could not be terminated after retirement and held that the plan was ambiguous. As a result, the court found that the plaintiffs should have been allowed to present extrinsic evidence to clarify its meaning. *Id.* at 152. *See also Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1493-94 (N.D. Cal. 1993) (language permitting amendment of top hat plan "at any time or from time to time" was inconsistent with other mandatory provisions in the plan; defendant's "reserved power to amend, modify or terminate the Plan [did] not entitle the [defendant] to avoid its express contractual obligations" with respect to vested benefits).

In this case, similarly, the Plan's language permitting amendment "at any time" is ambiguous to the extent that it would allow Fox & Grove to take away Barrett's vested benefits despite language in the Plan that each participant "shall be entitled" to benefits which "shall be paid" when the participant leaves the firm. Plan §§3.1, 5.1. Fox & Grove's May 13, 1999 memorandum "formaliz[ing] the obligation to pay" benefits does not clarify this ambiguity. Fox & Grove points out that it is merely deferring, as opposed to terminating Barrett's payments. Def. Reply, p. 2. However, by the amendment's own terms, Barrett's benefits could be substantially reduced or eliminated altogether if the firm does not have sufficient assets remaining after it pays off its creditors. Fox & Grove suggests that this result is expressly

7

contemplated by the Plan. According to the firm, Barrett is only entitled to his "capital account," the value of which is "unascertainable at the present time because the true amount of capital cannot be determined until liquidation is complete." Def. Reply, pp. 3-4. But Fox & Grove has stipulated that the value of Barrett's capital account as of his resignation date was $61,434, and the Plan itself says nothing about recalculating that value upon liquidation or otherwise. At most, Fox & Grove has raised a question of fact as to whether the value of Barrett's capital account was subject to recalculation and possible reduction under the Plan if the firm decided to cease operations.

The mere fact that Fox & Grove claims to have acted in good faith based on its desire to prevent "the inequity of Plaintiff or any other participant from being paid a greater percentage of his calculated share than the amounts to be paid other participants" in no way demonstrates that the firm acted in accordance with its contractual obligations under the Plan. Def. Reply, p. 2. See, e.g., Kemmerer, 70 F.3d at 289 (employer who amended plan in order to protect the participants' unfunded balances was still bound by the terms of the plan); Kinesoft Development Corp. v. Softbank Holdings Inc., 139 F. Supp. 2d 869, 894 (N.D. Ill. 2001) (covenant of good faith and fair dealing aids in construction of a contract but "[c]ourts will not . . . interpret the covenant to make a better contract for the parties than they made for themselves, nor will courts construe the covenant to establish new, independent rights or duties not agreed upon by the parties"). And the fact that other Plan participants have chosen not to challenge Fox & Grove's decision to amend the Plan in a manner that affects vested benefits does not establish that it was authorized to do so, or that Barrett is now contractually bound by that amendment.

In sum, reasonable persons could reach different conclusions about the meaning of the Plan's ambiguous language and it is for a factfinder to resolve that ambiguity. *See Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 848 (7th Cir. 1998) (quoting *DeLathouwer v. Kewanee Boiler Corp.*, 94 Ill. App. 3d 802, 419 N.E.2d 688, 692 (1981)) ("if the meaning of the contract is uncertain in light of the extrinsic evidence, then the intent of the parties to the contract must be determined as a question of fact by the jury or by the court in a trial without a jury"). Thus, Fox & Grove's Motion to Dismiss Count 1 as moot is denied.

B.  **Breach of Contract Claim**

The only basis for Fox & Grove's motion to dismiss Barrett's breach of contract claim is the Seventh Circuit's "usual practice" of dismissing state law claims when all federal claims have been dismissed prior to trial. Def. Mem., p. 6 (citing *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)). Having found that genuine issues of fact preclude dismissal of Barrett's ERISA claim, the Court will not dismiss his supplemental state law breach of contract claim.

## CONCLUSION

For the reasons stated above, Fox & Grove's Motion to Dismiss (Docket Entry #25-1) is denied. Barrett's Motion to Strike Portions of the Affidavit of Kenneth J. McGrath (Docket Entry #31-1) is denied as moot.

                                                                                             _____
                                                                                             NAN R. NOLAN
                                                                                             United States Magistrate Judge

Dated: December 2, 2002