# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5910 | **DATE** | 3/27/2003 |
| **CASE TITLE** | Barrett vs. Fox & Grove Chtd | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the petitioners' motions for leave to intervene are granted [37-1, 38-1, 39-1, 40-1, 41-1]. Status hearing held. Settlement conference set for April 29, 2003 at 1:30 p.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 8 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 55 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| cav7777 | courtroom deputy's initials | 03 MAR 27 PM 5:10 U.S. DISTRICT COURT date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM HENRY BARRETT, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FOX AND GROVE, CHARTERED, ) <br> ) <br> Defendant. ) | Case No. 01 C 5910 |

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Plaintiff William Henry Barrett filed suit against defendant Fox & Grove, Chartered ("Fox & Grove") to recover monies allegedly owed him under an ERISA deferred compensation plan (Count 1) and unpaid wages and compensation (Count 2). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This matter is now before the Court on the motions of nine former equity partners of Fox & Grove for leave to intervene in this lawsuit. For the reasons set forth below, the motions are granted.

## BACKGROUND[1]

Barrett is a licensed Illinois attorney who worked at the law firm of Fox & Grove until he resigned in December 2000. After his resignation, Barrett started receiving benefits under Fox & Grove's Deferred Compensation Plan (the "Plan"), an ERISA top hat plan maintained "primarily

---

[1] The Court assumes the reader's familiarity with its prior opinion in this case, *Barrett v. Fox and Grove, Chartered*, No. 01 C 5910, 2002 WL 31761410 (N.D. Ill. Dec. 9, 2002), and will not repeat background information unless necessary for an understanding of the pending motions.

for the purpose of providing deferred compensation to a select group of management or highly compensated employees." 29 U.S.C. §§1051(2), 1081(3), 1101(a); *Garratt v. Knowles*, 245 F.3d 941, 946 n.4 (7th Cir. 2001). On March 31, 2001, Fox & Grove ceased its operations, terminated the employment of all of its attorneys, commenced liquidation, and stopped making payments to Barrett under the Plan. As of that date, Barrett was one of eleven Plan participants entitled to benefits.

On August 1, 2001, Barrett filed suit in federal court alleging a state law contract claim for unpaid wages and an ERISA claim based on the firm's (1) failure to pay him any installments of deferred compensation after March 31, 2001; and (2) erroneous calculation of the total value of his deferred compensation account. On May 21, 2002, the directors of Fox & Grove amended the Plan, retroactive to March 31, 2001, to provide that no participant would receive any payment of deferred compensation "until such time as the [Plan] Committee, in its reasonable judgment, decides that all debts of the [firm] other than obligations under the plan have been paid or settled." The directors amended the Plan due to uncertainty about the firm's ability to pay all Plan participants the entirety of their deferred compensation accounts after repaying all outstanding debts, and their determination that no individual participant should receive any payments unless all other participants received a proportionate share.

On or about July 17, 2002, Fox & Grove filed a Motion to Dismiss Barrett's lawsuit, claiming that the retroactive amendment to the Plan defeated his claim for any further payment until the liquidation process was complete. This Court denied that motion on December 2, 2002, finding that (1) the Plan's language permitting amendment "at any time" is ambiguous to the extent that it would allow Fox & Grove to take away vested benefits despite language in the Plan

2

that each participant "shall be entitled" to benefits which "shall be paid" when the participant leaves the firm, Plan §§3.1, 5.1, and (2) it is for a factfinder to resolve this ambiguity. *Barrett*, 2002 WL 31761410, at *4-5. As a result, nine other former equity partners who were participants in the Plan (the "petitioners") now seek leave to intervene in this lawsuit.

## DISCUSSION

Intervention is the proper mechanism for nonparties to protect interests that may be adversely affected by a trial court's judgment. *Felzen v. Andreas*, 134 F.3d 873, 874 (7th Cir. 1998). Fed. R. Civ. P. 24 contemplates two types of intervention: intervention as of right and permissive intervention. A petitioner may intervene as a matter of right by satisfying the following four criteria: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (quoting *Shea v. Angulo*, 19 F.3d 343, 344 (7th Cir. 1994)); Fed. R. Civ. P. 24(a). A motion to intervene as of right "should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Reich*, 64 F.3d at 321 (quoting *Lake Investors Development Group, Inc. v. Egidi Development Group*, 715 F.2d 1256, 1258 (7th Cir. 1983)). Because rightful intervention cases are highly fact specific they tend to resist comparison to prior cases. *Reich*, 64 F.3d at 321.

Permissive intervention under Rule 24(b) requires a petitioner to show that (1) a common question of law or fact exists; (2) the petition was timely made; and (3) the court has independent jurisdiction over the claims. *Security Insurance Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d

1377, 1381 (7th Cir. 1995). The decision to grant or deny a motion for permissive intervention is "wholly discretionary with the district court." *Taco Bell Corp. v. Continental Casualty Co.*, No. 01 C 0438, 2003 WL 124454, at *7 (N.D. Ill. Jan. 13, 2003) (quoting *Keith v. Daley*, 764 F.2d 1265, 1271 (7th Cir. 1985)). In exercising this discretion, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Heartwood, Inc. v. U.S. Forest Service, Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (quoting Fed. R. Civ. P. 24(b)).

In this case, the petitioners claim that they are entitled to intervene in Barrett's lawsuit under both standards. Only Barrett opposes their motions.

### A. Intervention as of Right

The petitioners argue that they can intervene as of right because "both the Plaintiff and the Defendant herein are asserting rights in money to which [they] each have an equal right, and the disposition of the instant action may as a practical matter impede [their] ability to protect [their] respective interests." Motions ¶13/15. Barrett's primary objection is that the petitioners do not have any interest in the subject matter of the action.

The "interest" required by Rule 24(a) "has never been defined with particular precision." *In re Discovery Zone Securities Litigation*, 181 F.R.D. 582, 593 (N.D. Ill. 1998) (quoting *Security Insurance Co. of Hartford*, 69 F.3d at 1380). A potential intervener's interest must be a "direct, significant, legally protectable one . . . It is something more than a mere 'betting' interest, but less than a property right." *In re Discovery Zone*, 181 F.R.D. at 593; *Reich*, 64 F.3d at 322. "In ascertaining a potential intervenor's interest in a case, our cases focus on the issues to be

resolved by the litigation and whether the potential intervenor has an interest in those issues." *Reich*, 64 F.3d at 322.

Barrett argues that the petitioners do not have any interest in his personal deferred compensation account because they are shareholders of the firm. According to Barrett, the petitioner-shareholders are trying to "reinvent themselves" as creditors to avoid "the corporate law maxim that makes shareholders inferior to creditors when a business dissolves." Barrett says that only he is a true creditor so he has a superior claim to the Plan benefits. Pl. Mem., pp. 4-5. However, nothing in the language of the Plan suggests that shareholder status has any bearing on a participant's eligibility for benefits. To the contrary, the Plan states that any *participant* who "leaves the employ" of the firm will be paid benefits. Plan §5.1. The Plan also states that participants entitled to receive payments are to be treated as general unsecured creditors of the firm. Plan §9.2. Like Barrett, the petitioners have left the employ of Fox & Grove, are eligible for benefits under the Plan, and are seeking to assert their rights as Plan participants. 29 U.S.C. §1132(a)(1)(B). Thus, the Court does not see how the creditor-shareholder distinction is relevant to whether the petitioners have an interest in this lawsuit.

For their part, the petitioners focus on the fact that their right to collect funds under the Plan will be impaired if Barrett is successful in this litigation. If the May 21, 2002 amendment is found to be invalid, then each participant will immediately be entitled to the full value of his or her deferred compensation account. According to the petitioners, however, there will likely not be sufficient funds available to pay each participant in full. Thus, a decision in Barrett's favor would impair the petitioners' ability to recover the monies owed them under the Plan.

The Court is not certain that this provides an adequate basis for intervention as of right in a case involving an unfunded ERISA top hat plan. *See Reich*, 64 F.3d at 322 (intervention under Rule 24(a) is not proper where "a third party who has some outstanding monetary claim from one of the parties attempts to intervene to ensure that the outcome of the case preserves as much of its claim as possible"); *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (mere economic interest in the outcome of litigation is insufficient to support the right to intervene, but "an intervener's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund"); *Reliable Home Health Care, Inc. v. Union Central Insurance Co.*, 295 F.3d 505, 513 (5th Cir. 2002) (an unfunded plan, such as a top hat plan, is "paid solely from the general assets of the employer"); Motions ¶¶6, 7 ("because the Plan was unfunded, there were no funds 'earmarked' for distribution to the participants as of March 31, 2001"). Neither the petitioners nor the parties have addressed any of the issues raised by these cases.

Nor do the petitioners argue that their status as Plan participants gives them a direct interest in any interpretation of the Plan language or the May 21, 2002 amendment. And they similarly fail to address how a decision in this case on the amendment's validity would affect their right to challenge its validity in a separate lawsuit or to sue for full payment under the Plan. *See, e.g., Shea*, 19 F.3d at 347 (quoting *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)) ("[i]mpairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding"). All the petitioners offer is a conclusory assertion that "disposition of the instant

6

action may as a practical matter impede our ability to protect our respective interests." Motions ¶13/15.

In short, the petitioners failed to properly develop their arguments in support of Rule 24(a) intervention, and the Court is under no duty to research and analyze the arguments for them. *See United States v. Amerson*, 185 F.3d 676, 689 (7th Cir. 1999) ("[g]iven our adversarial system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel"). In any event, the Court need not reach this issue because it finds that the petitioners may intervene under Rule 24(b).

**B.     Permissive Intervention**

As noted, permissive intervention is proper if a common question of law or fact exists, the petition to intervene was timely made, and there is an independent basis for the court's jurisdiction. *Security Insurance Co. of Hartford*, 69 F.3d at 1381. The parties do not dispute jurisdiction over the petitioners pursuant to 29 U.S.C. §1132(a)(1)(B), but Barrett argues that (1) there are no common questions involved, (2) the motions are untimely, and (3) he will suffer prejudice and delay if intervention is granted.

**1.     Common Question of Law or Fact**

The petitioners argue that "our right to relief arises out of the same series of transactions (i.e., the termination of our employment, the Firm's cessation of operations, and the retroactive Plan amendment) that give rise to the claims already before the court." Motions ¶14/16. Barrett claims that "not a single item of evidence will overlap," again focusing on his theory that the petitioners are shareholders while he is a creditor of Fox & Grove. Pl. Mem., p. 7. The Court has finds Barrett's creditor-shareholder theory insufficient to demonstrate an absence of common

7

legal or factual questions. To the contrary, the interpretation of the Plan and its amendment is common to the claims of all Plan participants, including Barrett and the petitioners. And intervention will prevent the petitioners from filing nine separate lawsuits, each requiring a determination regarding the validity of the Plan amendment. *See E.E.O.C. v. Regis Corp.*, No. 99 C 8270, 2001 WL 1911025, at *1 (N.D. Ill. Jan. 17, 2001) ("[t]he purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved"). This, in turn, will help preserve judicial resources and prevent prejudice to the petitioners from the "precedential impact of an unfavorable decision in another lawsuit." *Id.*

### 2. Timeliness

Barrett next argues that the petitioners' motions are untimely. The test for timeliness is "essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich*, 64 F.3d at 321 (citation omitted). In determining whether a petition to intervene is timely, the court must consider four factors: (1) the length of time the intervener knew or should have known of his or her interest in this case, (2) the prejudice to the original party caused by the delay, (3) the resulting prejudice to the intervener if the motion is denied, and (4) any unusual circumstances." *In re Discovery Zone Securities Litigation*, 181 F.R.D. at 594 (quoting *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991)). Whether a petition is timely presented is within the court's discretion. *United States v. City of Chicago*, 908 F.2d 197, 199 (7th Cir. 1990).

In this case, the petitioners claim that a majority of the participants met shortly after the firm ceased operations on March 31, 2001 and, out of a sense of fairness, agreed that "all

8

receivables should be applied against the obligations of the Firm to outside creditors before any further distributions of deferred compensation would be made to participants." Motion of Fox et al. ¶16. This agreement was confirmed – albeit more than a year later – by the retroactive May 21, 2002 amendment, which was prompted by the directors' uncertainty about the firm's ability to pay all Plan participants after repaying its outstanding debts. When this Court determined that questions of fact exist as to whether the amendment is valid, the petitioners first realized that they needed to intervene in order to protect their respective interests in the Plan funds. *Id.*

The Court finds that the petitioners' motions to intervene are timely. The earliest that the petitioners should have known of their need to intervene was when it became clear that the firm would likely not have sufficient funds to pay all Plan participants. The petitioners did not move to intervene at that time, however, in the belief that the Plan amendment was valid and would protect their interests by ensuring that no individual participant would receive any payments unless all other participants received a proportionate share. There is little case law regarding modification of top hat plans and the Plan does state that it can be amended or terminated "at any time." Plan §§8.1, 8.2. Thus, the petitioners were not unreasonable in believing that the Plan amendment was valid and that their interests would be protected, regardless of Barrett's lawsuit. Once the Court determined that the Plan was ambiguous on the issue of amendment, the petitioners first received notice that their rights may not be protected by the amendment, and they requested leave to intervene less than three weeks later.

3. **Prejudice or Delay**

Contrary to Barrett's assertion, allowing the petitioners to intervene will not unduly delay or prejudice these proceedings. Barrett's only claim of prejudice is that he will need extensive

9

discovery on the issue of whether the petitioners are shareholders or creditors. Assuming this is true, any potential prejudice or delay is outweighed by the burden on the petitioners, who would have to bear the expense of filing their own lawsuits and "would likely be burdened by unfavorable rulings in the pending litigation, though they were not parties to it." *Regis Corp.*, 2001 WL 1911025, at *2. In addition, the petitioners would not be adequately represented by the original parties. Barrett claims that the amendment is invalid and that he is entitled to full payment of his Plan benefits without regard to any other participant. Fox & Grove argues that it will not have sufficient funds to pay all Plan participants and that the valid amendment mandates a pro rata distribution of benefits. Seven of the petitioners agree with Fox & Grove, but two of them claim that the amendment, valid or not, should not apply to them because they left the firm's employ prior to March 31, 2001. Goldman Motion ¶11; Blakely Motion ¶11. The Court finds that on balance, the original parties would not adequately represent the interests of all petitioners and they should be allowed to intervene in this case. *See Regis Corp.*, 2001 WL 1911025, at *2 (citing *Jochims v. Isuzu Motors, Ltd.*, 148 F.R.D. 624, 626 (S.D. Iowa 1993)) ("Rule 24 is to be construed liberally with all doubts resolved in favor of permitting intervention").

## CONCLUSION

For the reasons stated above, the petitioners' Motions for Leave to Intervene (Docket Entry #37-1, 38-1, 39-1, 40-1 and 41-1) are granted.

Nan R. Nolan
NAN R. NOLAN
United States Magistrate Judge

Dated: March 27, 2003

10